Case 4:21-cv-01091   Document 14   Filed on 08/23/21 in TXSD   Page 1 of 6

United States District Court
Southern District of Texas
**ENTERED**
August 23, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| NICHOLE LEONARD, | § |
| | § |
| *Plaintiff*, | § |
| | § |
| v. | § CIVIL ACTION H-21-1091 |
| | § |
| MESILLA VALLEY TRANSPORTATION and JOHN DOE, | § |
| | § |
| *Defendants*. | § |

## MEMORANDUM OPINION AND ORDER

Pending before the court is a motion to dismiss filed by defendant Mesilla Valley Transportation ("MVT"), which the court has converted into a motion for summary judgment. Dkt. 7 (motion to dismiss); Dkt. 11 (order converting motion); Dkt. 12 (supplemental motion for summary judgment). Having considered the motion, response, supplemental motion, response, and record evidence, the court is of the opinion that the motion should be DENIED.

### I. BACKGROUND

Plaintiff Nichole Leonard worked as a security guard and was employed by Sangar Cargo Security, Inc. ("Sangar") in April of 2020. Dkt. 12, Ex. B; Dkt. 13, Ex. A. Sangar had a contract with MVT to provide security guards for MVT. Oasis Outsourcing, Inc., is a Professional Employer Organization that arranges for workers' compensation insurance and provide payroll services for Sangar. *See* Dkt. 12, Ex. B; Dkt. 13, Ex. A. Leonard contends that she was working as a security guard at MVT's Houston Terminal on April 27, 2020, and that defendant John Doe, who was operating an 18-wheeler at the terminal, made a wide and unsafe turn and struck the security booth where Leonard was working, causing her injuries. Dkt. 1-4 (state-court petition). She received treatment for her injuries under the workers' compensation insurance Oasis arranged

for Sangar.  Dkt. 12, Ex. B.  She subsequently filed this lawsuit against MVT and Doe in Harris County District Court.  Dkt. 1-4.  She alleges that Doe was negligent, MVT negligently entrusted its vehicle to Doe, MVT is responsible for Doe's negligence under the *respondeat superior* doctrine, and MVT was negligent because it failed to properly train Doe.  *Id.*  She seeks more than $250,000 but less than $1,000,000 in damages.  *Id.*

MVT removed the case to this court alleging diversity jurisdiction, filed an answer and an amended answer, and then moved to dismiss Leonard's claims, arguing that Leonard was MVT's borrowed servant and that the Texas Workers' Compensation Act provided the exclusive remedy for her claims against MVT.  Dkt. 7.  Because MVT relied on information that was not discussed in Leonard's complaint, the court converted the motion to dismiss into a motion for summary judgment and asked the parties to submit supplemental briefing and evidence.  Dkt. 11.  Both parties have provided additional briefing and evidence, and the motion is now ripe for disposition.  *See* Dkt. 12 (supplemental motion for summary judgment); Dkt. 13 (response).

## II. LEGAL STANDARD

A court shall grant summary judgment when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A] fact is genuinely in dispute only if a reasonable jury could return a verdict for the nonmoving party."  *Fordoche, Inc. v. Texaco, Inc.*, 463 F.3d 388, 392 (5th Cir. 2006).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548 (1986).  If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e).  The court must view the evidence in the light most

favorable to the non-movant and draw all justifiable inferences in favor of the non-movant. *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III. ANALYSIS

MVT notes that at the time of the accident, Leonard was working as a temporary security guard at MVT's terminal, but she was an employee of Sangar. Dkt. 12. Sangar and MVT are both covered by a workers' compensation insurance policies. Dkt. 12 & Exs. A, B. MVT asserts that Leonard was also the borrowed servant of MVT because MVT controlled the manner and details of Leonard's work. Dkt. 12. MVT contends that because Sangar had workers' compensation insurance and Leonard was MVT's borrowed servant, MVT is immune from common law liability under the Texas Workers' Compensation Act. *Id.* It provides affidavits, copies of MVT's and Sangar's workers' compensation policies, the incident report, evidence of treatment under the worker's compensation insurance claim, and the agreement between MVT and Sangar for security services. Dkt. 12, Exs. A–B.

Leonard does not disagree with MVT's allegation that under the law MVT would be immune if she were its borrowed servant. Instead, she argues that she was not the borrowed servant of MVT because MVT did not control the manner and details of her work. Dkt. 13. Additionally, she asserts that there is no written agreement showing that MVT required Oasis or Sangar to secure workers' compensation insurance for Leonard. *Id.* As evidence, Leonard provides her own affidavit in which she asserts that MVT did not instruct her how to perform her job, did not furnish any tools for her to perform her job, did not direct her about the order in which her services were performed, did no provide uniforms or name tags, did not oversee her work, and did not provide her with any written materials. Dkt. 13, Ex. A. She asserts that she was stationed at the only guard shack at the facility, she would check in with Oasis, not MVT, and her work was supervised by an

3

employee of Sangar. *Id.* She contends that this evidence demonstrates she was employed by Sangar and was not MVT's borrowed servant. Dkt. 13.

Under the Texas Workers' Compensation Act, "Recovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage or a legal beneficiary against the employer or an agent or employee of the employer for the death of or a work-related injury sustained by the employee." Tex. Lab. Code Ann. § 408.001(a). An employee of a temporary agency can have more than one employer for purposes of the Texas Workers' Compensation Act. *Wingfoot Enters. v. Alvarado*, 111 S.W.3d 134, 140 (Tex. 2003). Texas courts use the right-of-control test to determine if an injured worker is a borrowed servant for purposes of the Texas Workers' Compensation statute. *Phillips v. Am. Elastomer Prods., L.L.C.*, 316 S.W.3d 181, 187 (Tex. App.—Houston [14th Dist.] 2010, pet. denied). Under this test, "an injured worker is held to be the employee of the employer who had the right to control the details of the work at the time of injury." *Id.*

The "right of control is inferred from the facts and circumstances of the work." *Id.* Courts consider "the nature of the work to be performed, the length of the employment, the type of machinery furnished, the acts representing an exercise of actual control, and the right to substitute another operator on a machine." *Id.* This "includes determining when and where to begin and stop work, the regularity of hours, the amount of time spent on particular aspects of work, the tools and appliances used to perform the work, and the physical method or manner of accomplishing the end result." *Id.* If the right of control is expressed in a contract, "a court can dispose of the borrowed servant issue without the necessity of considering the facts and circumstances of the project." *Marshall v. Toys-R-Us Nytex, Inc.*, 852 S.W.2d 193, 196 (Tex. App.—Houston [14th Dist.] 1992, writ denied).

Here, the contract between MSV and Sangar covers how much MVT would pay for security guards, when overtime rates applied, how MVT would go about adjusting pay rates, and the timeframe of the contract. Dkt. 12, Ex. B. It does not address the right to control other than noting that MVT could request additional personnel or hours. *See id.* MVT's affidavits indicate that (1) neither Sangar nor Oasis controlled the facility or determined how to staff the facility, how many guards to staff, or where the guards should be located (Dkt. 12 Ex. B), and (2) the guards at MVT's facility were under the control of MVT, which determined when and where the guards were to patrol, the manner in which they should perform the security function, how many guards were needed, and the times during which guards should be present (Dkt. 12, Ex. A). This evidence supports MVT's assertion that Leonard was its borrowed servant.

Leonard, on the other hand, asserts she was not MVT's borrowed servant. In her affidavit, she states that (1) nobody at MVT ever instructed her how to perform her job duties; (2) nobody at MVT ever furnished her with tools to perform her job; (3) she did not check in with anybody at MVT; (4) nobody at MVT directed the order in which security services were provided; (5) MVT did not provide a uniform or name tag; (6) she was stationed at the only guard shack at the facility and nobody at MVT told her where she should be stationed; (7) nobody at MVT was ever identified as her supervisor or manager; and (8) MVT did not provide her with any written materials. Dkt. 13, Ex. A. She asserts that (1) she checked in with Oasis to let them know when she started and ended her shift; (2) her uniform identified her as a employee of Sangar; (3) a supervisor employed by Sangar oversaw her work; (4) any written materials provided were from Sangar or Oasis; and (5) she believed any issues with her job performance would be addressed by Sangar or Oasis, not MVT. *Id.* This evidence supports Leonard's contention that MVT did not control the facts and circumstances of her work.

While the court may be able to infer a right to control if MVT's affidavits were taken in isolation, Leonard's affidavit creates an issue of material fact on this issue, making summary judgment in MVT's favor inappropriate. At this preliminary stage, it would appear that a jury is necessary to resolve the borrowed servant question. However, the court is aware that the parties have not yet engaged in significant discovery. The motion for summary judgment is DENIED WITHOUT PREJUDICE to re-filing if discovery reveals further evidence that clarifies the borrowed servant issue.

### IV. Conclusion

MVT's motion to dismiss (Dkt. 7), which the court converted to a motion for summary judgment in the interest of judicial economy (Dkt. 12), is **DENIED**.

Signed at Houston, Texas on August 23, 2021.

_____
Gray H. Miller
Senior United States District Judge